# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ROBERT ALAN C.,**[1]        ) | |
| ) | |
| **Plaintiff,**       ) | |
| ) | **CIVIL ACTION** |
| **v.**                      ) | |
| ) | **No. 22-1277-JWL** |
| **KILOLO KIJAKAZI,**     ) | |
| **Acting Commissioner of Social Security,**    ) | |
| ) | |
| **Defendant.**      ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff protectively filed applications for SSDI and SSI benefits on January 21, 2021 alleging disability beginning December 1, 2018.  (R. 24, 235-52).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erroneously relied upon mischaracterizations of the opinion of his treating nurse-practitioner, APRN Jacobs, to find his substance use disorder a contributing factor material to the determination of disability, thereby denying the award of benefits.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

2

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416,920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that  there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the error alleged in Plaintiff's Social Security Brief.

## II.  Discussion

Plaintiff's Brief explains his argument that:

> the crux of the ALJ's decision to deny [Plaintiff]'s disability benefits was his assessment regarding [Plaintiff]'s drug addiction and alcoholism. Indeed, the ALJ's decision acknowledged that [Plaintiff] had disabling limitations that prevented him from working. (Tr. at 27).  But the ALJ denied benefits based upon his assessment that [Plaintiff]'s disabling limitations were attributed to his alcohol use. (Tr. at 27-31).  Accordingly, the ALJ's mischaracterization of APRN Jacob's opinion as being reflective of [Plaintiff]'s condition during alcohol use [rather than when he is not using alcohol] requires remand."

(Pl. Br. 12).

Plaintiff argues the ALJ erred in two respects.  First, he "mischaracterized the records surrounding the time that Ms. Jacob provided her opinion" by citing evidence from December 2018 and March 2021 which "significantly predated APRN Jacob's November 22, 2021, opinion" and are not reflective of the time when Ms. Jacob offered her opinion.  Id. at 14.  Plaintiff points out that the evidence cited by the ALJ to show Plaintiff's functioning if he stopped using alcohol "came from the eight months leading up to and three months after APRN Jacob's opinion" and demonstrated that Ms. Jacob's opinion was in fact regarding Plaintiff's functioning when sober.  Id.  He argues, "The ALJ's reliance on December 2018 and March 2021 emergency room visits for remote alcohol binges were not representative of [Plaintiff]'s functioning 'during this time' – November 2021 – as the ALJ found."  Id. at 15 (quoting without citation R. 28).  He argues this is a mischaracterization of the record which cannot support the conclusion reached.  (Pl. Br. 15) (contrasting Lucinda S. v. Kijakazi,  Civ. A. No. 21-1180-JWL, 2022 WL 2802317, at *7 (D. Kan. July 18, 2022) with Mark F. v. Kijakazi, Civ. A. No. 21-2034-JWL, 2022 WL 407394, at *8 (D. Kan. Feb. 10, 2022)).

Plaintiff's second allegation of error is that the ALJ mischaracterized the language of Ms. Jacob's opinion.  Id. at 14.  He argues the ALJ erred in finding Ms. "Jacob's opinion did not include an analysis of functioning and severity with sobriety."  Id. at 15.  He argues the finding is erroneous because Ms. Jacob diagnosed "Alcohol use d/o in early remission," and she addressed the analysis at issue because the form states, "The Medical Source Statement – Mental sets forth my professional opinion of the claimant's limitations.  If drug addi[c]tion and/or alcoholism is a diagnosis, this statement sets forth

the limitations remaining if the claimant stopped doing drugs or alcohol."  (Pl. Br. 15) (quoting R.  1137) (emphasis added).  Plaintiff argues Ms. Jacob's treatment notes from August and November 2021 and January 2022 "suggest that her opinion on November 22, 2021 [containing disabling limitations], was based on [Plaintiff]'s functioning when sober, just as" the form indicates.  Id. at 16.

In response, the Commissioner notes that the record has evidence that Ms. Jacob treated Plaintiff from February 2020 through January 2022 and the record contains evidence that Plaintiff had problems with alcohol intoxication "around March 2020, July 2020, August 2020, January 2021, February 2021, March 2021, and July 2021." (Comm'r Br. 7).  She also notes Ms. "Jacob consistently diagnosed Plaintiff with alcohol use disorder, severe, through November 2021, when she gave her opinion" and it was not until January 2022 that her treatment notes reveal a diagnosis of "alcohol use disorder, severe, in early remission" as stated in her Medical Source Statement.  (Comm'r Br. 7) (emphasis added).  She argues Ms. Jacob's opinion of marked and extreme limitations, off task behavior 25% of the time, and missing work 4 days or more each month "contrasted with the evidence from periods of abstinence and lacked support with respect to Plaintiff's ability [t]o function while not using substances."  Id.  She points to evidence that "Plaintiff lost his jobs due to relapse but performed his work adequately when sober," and that when "sober while complying with medications and not going through withdrawal symptoms, Plaintiff had mostly unremarkable mental status findings."  Id. She concluded, "Thus, the ALJ reasonably determined that [Ms.] Jacob's opinion was

only somewhat persuasive because it reflected Plaintiff's functioning during the time when he was abusing alcohol."  Id.

A.      **Legal Standard When There Is Evidence of the Claimant's Drug Addiction or Alcoholism**

The Act and the regulations provide that if a claimant is found disabled and the agency has evidence of the claimant's drug addiction or alcoholism the agency "must determine whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. §§404.1535(a), 416.935(a).  The regulations provide that in such a case the agency "will evaluate which of [the claimant's] current physical and mental limitations, upon which [the agency] based [its] current disability determination, would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling."  Id. §§404.1535(b)(2), 416.935(b)(2).  If the agency finds the remaining limitations would not be disabling, they will find that the drug addiction or alcoholism is a contributing factor material to the determination of disability.  Id.

The Commissioner propounded Social Security Ruling (SSR) 13-2p to explain how the agency considers "whether 'drug addiction and alcoholism' (DAA) is a contributing factor material to [the] determination of disability in disability claims and continuing disability reviews."  SSR 13-2p, 2013 WL 621536, *1 (SSA Feb. 20, 2013).  SSR 13-2p has a section specifically addressing the consideration of DAA if, as here, the claimant has co-occurring mental disorder(s):

a. Many people with DAA have co-occurring mental disorders; that is, a
mental disorder(s) diagnosed by an acceptable medical source in addition to

7

their DAA.  We do not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol.

b. To support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA.  Unlike cases involving physical impairments, <u>we do not permit adjudicators to rely exclusively on medical expertise</u> and the nature of a claimant's mental disorder.

c. We may purchase a CE [(consultative examination)] in a case involving a co-occurri co-occurring [sic] mental disorder(s).  We will purchase CEs primarily to help establish whether a claimant who has no treating source records has a mental disorder(s) in addition to DAA.  See Question 8.  We will provide a copy of this evidence, or a summary, to the CE provider.

d. We will find that DAA is not material to material to [sic] the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of DAA.

2013 WL 621536, *10 (emphasis added).

## B.    The ALJ's Relevant Findings

In his consideration at the first step of the Commissioner's sequential evaluation process the ALJ noted Plaintiff earned $14,729 working for Apex Trucking in March through November 2019 and earned $4,137 working for Groendyke Transport in May through July 2021.  (R. 27).  He noted, "Although this work activity may have been performed over the substantial gainful activity threshold, it does not change the disposition in this case."  <u>Id.</u>

The ALJ determined at step three that, including substance use, the severity of Plaintiff's combination of impairments including cervical spine disorder, pancreatitis,

8

bipolar disorder, depressive disorder, anxiety disorder, and substance use disorder meet

the criteria of Listing 12.04 of the Listing of Impairments.  (R. 27).  The ALJ found this

to be true because, including substance use, although Plaintiff only has moderate

limitations in the first two "paragraph B" criteria, he has marked limitations in the other

two criteria—concentrating, persisting, or maintaining pace; and adapting or managing

oneself.  Id. at 28.  He further explained his rationale in finding Listing 12.04 is met when

including substance use:

> The claimant has lost multiple jobs due to alcohol relapse and has had a
> number of emergency room visits due to symptoms related to alcohol
> abuse.  In December 2018, the claimant was seen in the emergency room
> with alcohol intoxication and a dog bite to the left ear--the claimant
> reported drinking one liter of vodka that day (Ex. 1F at 6, [R. 415]).
> Treatment notes from December 2019 found the claimant to be abusing
> alcohol and reported that he was experiencing "psychological pain" and
> was having difficulties connecting with people (Ex. 14F at 1, [R. 747]).  In
> March 2021, the claimant reported drinking excessively since losing his job
> a week prior (Ex. 20F at 1, [R. 962]).  See also Ex. 18F at 1, [R. 900].  In
> July 2021, the claimant lost his job due to having a relapse of alcohol abuse
> (Ex. 22F at 48, [R. 1109]).
>
> In November 2021, nurse practitioner, Constance Jacob, completed a
> medical source statement and opined that the claimant would be absent
> from work more than four days per month; and is markedly limited in
> maintaining concentration and attention, performing activities within a
> schedule, sustaining an ordinary routine, making simple work-related
> decisions, responding appropriately to changes in the work setting, being
> aware of normal hazards, and setting realistic goals (Ex. 25F at 2, [R.
> 1138]).  Ms. Jacob's opinion is somewhat persuasive because it is
> supported by corresponding treatment records and it is consistent with the
> claimant's functioning during this time, when he was noted to be abusing
> alcohol (Ex. 1F at 6, [R. 415]; Ex. 20F at 1, [R. 962]).  Notably, however,
> Ms. Jacob does not include any analysis regarding the claimant's residual
> functional capacity or the severity of his limitations with sobriety.

(R. 28).

The ALJ found that if Plaintiff stopped his substance use he would have only moderate limitations in the ability to concentrate, persist, or maintain pace and would have only mild limitations in the ability to adapt or manage himself.  (R. 30).  He explained:

> The claimant contended that he has limitations in concentrating generally, completing tasks, avoiding distractions, working with others without distracting them, and maintaining a regular work schedule.  On the other hand, the claimant said that he is also able to prepare meals, watch TV, manage funds, and handle his own medical care (Ex. 9E at 8, [R. 341]).  Additionally, the record fails to show any mention of distractibility (Ex. 23F at 4, [R. 1124]; Ex. 28F at 2, [R. 1161]).
>
> Finally, the claimant has mild limitations in his ability to adapt or manage herself [sic].  The claimant asserted that he has difficulties handling change and managing his mood.  That said, the claimant also stated that he is able to handle self-care and personal hygiene (Ex. 9E at 8, [R. 341]).  Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene, no problem getting along well with providers and staff, and normal mood and affect (Ex. 23F at 4, [R. 1124]; Ex. 28F at 2, [R. 1161]).

(R. 30).

The ALJ also explained the evidence regarding Plaintiff's mental abilities without substance use:

> In November 2019, the claimant was noted to be four months sober and did not have any mental or physical complaints other than abdominal pain (Ex. 11F at 7, [R. 654]).  Treatment records from January 2020 indicate that the claimant was sober and reported that he has not had any recent depressive episodes (Ex. 22F at 2, [R. 1063]).  Examination notes from February 2021 noted that the claimant was not abusing alcohol and subsequently had a normal mental and physical examination (Ex. 16F at 17, [R. 836]).  In April 2021, the claimant underwent an x-ray of the chest that found no abnormalities (Ex. 23F at 10, [R. 1130]).  Treatment notes from June 2021 indicate treatment for a sinus infection and a headache, and he was found to be alert, have proper orientation, had no gross neurological deficits, had normal mood and affect, and had intact judgement (Id. at 7, [R. 1127]).  In

August 2021, the claimant was seen for left arm tingling and sciatic pain, and was noted to have moderately severe depression (Id. at 4, [R. 1124]). On examination, he was noted to have normal mood and affect, intact judgment, and a normal musculoskeletal examination (Id., [R. 1125]). Psychiatric notes from August 2021 noted that the claimant has been sober for the last five weeks, and was found to have a substantially normal mental examination despite complaints of depression (Ex. 22F at 48, [R. 1110]). In October 2021, the claimant reported that Fluoxetine helped improve his mood and he was found to have a normal mental status examination (Id. at 52-53, [R. 1113-14]). The claimant reported having continued back pain in November 2021 (Ex. 27F at 4, [R. 1144]). Psychiatric records from November 2021 indicate continued progress on Fluoxetine and the claimant reported to have no anxiety or depression (Ex. 28F at 2, [R. 1161]). He was also noted to have a normal mental status examination (Id., [R. 1162]). In January 2022, the claimant reported having okay mood, short periods of depression, improved hallucinations since taking Risperidone, and a normal mental status examination (Ex. 28F at 6, [R. 1165-66]). In February 2022, the claimant reported having back pain but no depression (Ex. 27F at 15, [R. 1155]). He was found to have normal mood and affect, intact judgment, normal cervical range of motion, left muscle spasm in the cervical spine but normal range of motion, restricted bending, right SI joint tenderness, thoracic spine tenderness, left muscle spasms, and normal range of motion in the upper and lower extremities (Id.).

State agency psychologist, Dr. Locke, reviewed the medical record in April 2021 and opined that the claimant has no limitation in his ability to understand, remember, or apply information; mild limitations in his ability to interact with others; moderate limitations in his ability to concentrate, persist, or maintain pace; and mild limitations in his ability to adapt or manage oneself (Ex. 3A at 3, [R. 85]). See also Ex. 4A, [R. 92]. On reconsideration in November 2021, Dr. Robert Blum affirmed Dr. Locke's earlier opinion (Ex. 7A at 3, [R. 101]). See also Ex. 8A, [R. 111]. These opinions are generally persuasive because they are supported by their respective reviews of the record and they are consistent with the claimant's functioning when he is not abusing alcohol (Ex. 23F at 4, [R. 1124]; Ex. 28F at 2, [R. 1161]). As noted above and discussed further below, the claimant has reported that his symptoms have responded well to treatment. This fact seems to be confirmed by his mental status examinations and the fact that the claimant has been able to work above SGA [(significant gainful activity)] levels at various points since the alleged onset date. Again, his reports suggest that these jobs have ended due to relapse rather than another mental illness.

(R. 31-32).

The ALJ concluded his RFC assessment of Plaintiff's abilities without substance

use with this summary:

> The claimant's mental impairments appear mostly attributable to his
> alcoholism as he has continued to work until he has relapsed.  He has
> denied depression or stated that his depression was controlled with meds at
> multiple appointments.  He denied neck and back pain in March 2021 (Ex.
> 19F at 2, [R. 949]).  The claimant did sustain a cervical spine injury in
> March 2021, but he demonstrated full strength in his extremities, normal
> coordination, and normal reflexes (Ex. 20F at 8, [R. 969]).  Although he
> reported tingling in his left arm and sciatic pain for one month in August
> 2021, he did not demonstrate gross neurological deficits and his
> musculoskeletal exam was normal (Ex. 23F at 5, [R. 1125]).  At an
> examination in February 2022, the claimant demonstrated no gross
> neurological deficits, normal cervical range of motion, and normal range of
> motion of his extremities (Ex. 27F at 15, [R. 1155]).  Although the claimant
> has demonstrated tenderness, with muscle spasm and reduced range of
> motion in his back, the evidence does not suggest that the claimant would
> be unable to sustain a reduced range of light work.  Contrary to testimony,
> the claimant appears to have been performing volunteer work in February
> 2022, and he was working as a truck driver until mid-2021 when he
> reportedly lost the job due to a relapse (Ex. 22F at 48, [R. 1109]).
>
> The claimant has been prescribed and has taken appropriate medications for
> the alleged impairments, which weighs in the claimant's favor, but the
> medical records reveal that the medications have been relatively effective in
> controlling the claimant's symptoms (Ex. 22F at 53, [R. 1113]; Ex. 28F at
> 2, 6, [R, 1161, 1165-66]).
>
> The claimant's reports to his providers do not suggest the severity of
> symptoms his testimony suggested (Ex. 27F at 15, [R. 1155]; Ex. 28F at 2,
> 6, [R. 1161, 1165-66]; Ex. 22F 2, 21, 36, 40, 44, [R. 1063, 1082, 1097,
> 1101, 1105]).  The claimant has reported that his symptoms have responded
> well to treatment, and his mental status examinations do not suggest
> significant baseline limitations.  It is notable that the claimant has lost
> several jobs, but treatment records suggest that he could perform work
> within the residual functional capacity when sober.
>
> He testified that several jobs ended due to his pain, but this is not consistent
> with the medical evidence of record.  Although he testified that he had to

stop a volunteer job at Union Rescue Mission in September 2021, treatment notes indicate that he was still working there as of February 2022 (Ex. 27F at 15, [R. 1155]).

In sum, the above residual functional capacity assessment is supported by the totality of the medical evidence.  Although the claimant undoubtedly experiences some limitations resulting from his impairments, there is no supported indication that he is prevented from performing basic work activities.  All impairments, severe and non-severe, have been considered in determining the above referenced residual functional capacity determination.

(R. 33-34).

### C.   Analysis

Since the ALJ applied the correct legal standard in his evaluation, the question for the court is whether substantial evidence (such relevant evidence as a reasonable mind might accept as adequate to support a conclusion) in the record supports the ALJ's decision.  That inquiry begins with the rationale of the ALJ's decision.  In a case such as this, where the claimant has a substance use disorder and co-occurring mental disorders, the question is whether the evidence in the case record establishes that Plaintiff's co-occurring mental disorder(s) would not be disabling in the absence of DAA.  And in answering that question the adjudicator may not rely exclusively on medical expertise and the nature of Plaintiff's mental disorders.  Thus, neither Ms. Jacob's opinion that Plaintiff's mental disorders are disabling even if he stopped substance use, nor the state agency psychological consultants' opinions that Plaintiff is not disabled even including substance use is controlling in such a case as this.  The ALJ's decision, as summarized and quoted above, makes abundantly clear that he relied upon the record evidence to determine that if Plaintiff stopped substance use he would not be disabled by his co-

occurring mental disorders.  And such relevant evidence in the record as a reasonable mind might accept as adequate to support a conclusion supports the ALJ's determination—as he cited and explained in his decision.  The fact that the evidence might also support Ms. Jacob's opinion that Plaintiff would remain disabled if he stopped substance use or might also support the psychological consultants' opinions that Plaintiff is not disabled even including his substance use is of little concern, for as the Supreme Court explained long ago, "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  Moreover, the psychological consultants' opinions that Plaintiff is not disabled even including substance use is substantial evidence he would not be disabled if he stopped substance use.

Plaintiff's narrowly focused allegations of error in evaluating Ms. Jacob's opinion do not change the court's analysis.  Plaintiff's arguments misunderstand both the ALJ's decision and his evaluation of Ms. Jacob's opinion.  Plaintiff understands the ALJ's statement regarding "the claimant's functioning during this time, when he was noted to be abusing alcohol" (R. 28), to refer to the period "from the eight months leading up to and three months after APRN Jacob's opinion."  (Pl. Br. 14).  However, the period of time for which the ALJ is concerned is that "period of disability" for which Plaintiff is

claiming SSDI and SSI benefits—from December 1, 2018, continuing through the date of

the ALJ's decision, July 11, 2022.  (R. 24, 36, 235-52) <u>see also</u> 20 C.F.R. § 404.320.

This understanding of the ALJ's use of "during this time" is confirmed by the fact the

ALJ also discounted the opinion of nurse practitioner, Ms. Hambley as "extreme and not

consistent with clinical findings made during this time that indicate a greater range of

functioning."  (R. 33).

       In his second allegation of error in evaluating Ms. Jacob's opinion, Plaintiff

suggests the ALJ did not understand that Ms. Jacob opined Plaintiff was disabled even

when he was using alcohol.  He argues the ALJ erred in finding Ms. "Jacob's opinion did

not include an analysis of functioning and severity with sobriety" (Pl. Br. 15) because

Ms. Jacob noted her diagnosis of alcohol use disorder in early remission, because the

form on which she recorded her opinion findings indicated the limitations would remain

if Plaintiff stopped using alcohol, and because her treatment notes before and after the

date of her opinion (when Plaintiff was sober) suggest her finding of disabling limitations

was based on Plaintiff's functioning when sober.  While each of Plaintiff's three points is

true and well-taken, none of them addresses the ALJ's concern that Ms. Jacob's opinion

"does not include any <u>analysis</u> regarding the claimant's residual functional capacity or the

severity of his limitations with sobriety."  (R. 28) (emphasis added).  Ms. Jacob opined

regarding Plaintiff's mental limitations, she opined his alcohol use disorder was in early

remission and the form she used stated the limitations would remain even if he stopped

using alcohol, but as the ALJ pointed out, she provided no analysis how she arrived at or

what evidence supported the limitations opined and no analysis how or why she

concluded the limitations would remain if he stopped using alcohol.  Thus, the ALJ

appropriately found Ms. Jacob's opinion only somewhat persuasive, and Plaintiff has

shown no error in that determination.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated October 16, 2023, at Kansas City, Kansas.


s/ John W. Lungstrum
**John W. Lungstrum
United States District Judge**